UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE WILLIAMS-WALKER,

                              Plaintiff,

                                                                                                     Case # 15-CV-6288-FPG

v.

                                                                                                   DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

      Stephanie Williams-Walker ("Williams-Walker" or "Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 10, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

      On April 18, 2012, Williams-Walker protectively filed applications for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 534-38, 541-47. She alleged that she had been disabled since December 15, 2009, due to bipolar disorder, depression, schizophrenia, fibromyalgia, and high blood pressure. Tr. 587. After her application was denied at the initial administrative level, a hearing was held before Administrative Law Judge John P. Costello ("the

---

[1]     References to "Tr." are to the administrative record in this matter.

ALJ") on December 4, 2013, in which the ALJ considered Williams-Walker's application *de novo*. Tr. 32-75. Williams-Walker appeared at the hearing with her attorney and testified. *Id*. Julie A. Andrews, a Vocational Expert ("VE"), also testified. Tr. 46-50, 65-68, 71-72. On January 9, 2014, the ALJ issued a decision finding that Williams-Walker was not disabled within the meaning of the Act. Tr. 15-27. That decision became the Commissioner's final decision when the Appeals Council denied Williams-Walker's request for review on March 13, 2015. Tr. 1-4. Thereafter, Williams-Walker commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.      Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate

that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Williams-Walker's claim for benefits under the process described above. Tr. 15-27. At step one, the ALJ found that Williams-Walker engaged in substantial gainful activity throughout 2012, and thus found her "not disabled" for that time period. Tr. 17. The ALJ also found, however, that there had been a continuous 12-month period since the alleged onset date during which Williams-Walker did not engage in substantial gainful activity. Tr. 17-18. Accordingly, the ALJ proceeded with the disability analysis and indicated that his findings applied to the entire period from the alleged onset date to the decision date. *Id.*

At step two, the ALJ found that Williams-Walker had the following severe impairments: major depressive disorder, bipolar II disorder, panic disorder without agoraphobia, and fibromyalgia. Tr. 18. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 18-20.

Next, the ALJ determined that Williams-Walker retained the RFC to perform light work,[2] but she is limited to low stress work that involves only occasional decision making, and to only occasional interaction with co-workers and the general public. Tr. 20-25. At step four, the ALJ

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

relied on the VE's testimony and found that this RFC prevents Williams-Walker from performing her past relevant work as a gas station attendant, nurse aid, cashier-checker, home attendant, store laborer, and child monitor. Tr. 25-26.

At step five, the ALJ relied on the VE's testimony and found that Williams-Walker is capable of making an adjustment to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 26-27. Specifically, the VE opined that Williams-Walker could work as an agriculture produce sorter and small product assembler. Tr. 27. Accordingly, the ALJ concluded that Williams-Walker was "not disabled" under the Act. Tr. 27.

## II.     Analysis

Williams-Walker argues that the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of state agency psychiatrist Kavitha Finnity, Ph.D. ("Dr. Finnity") and state agency review psychologist Tammy Inman-Dundon ("Dr. Inman-Dundon"), which were the only mental health assessments in the record. ECF No. 10, at 21. Specifically, Williams-Walker asserts that the ALJ erred by giving only "some" weight to these opinions. ECF No. 10, at 22. The Commissioner maintains that the ALJ properly weighed the opinion evidence and that the RFC is supported by substantial evidence. ECF No. 11-1, at 16-21.

The SSA's regulations require the ALJ to "evaluate every medical opinion [he or she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must consider the following factors when he or she weighs a medical opinion: (1) whether the source examined the claimant; (2) whether

the opinion was rendered by a treating source; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). According to the SSA's rules, "if the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).

### A. Dr. Finnity's Opinion

Here, the ALJ evaluated Dr. Finnity's opinion and gave appropriate reasons for discounting it. Tr. 23-24. In his decision, the ALJ first summarized the symptoms that William-Walker reported at the exam and Dr. Finnity's objective findings. Tr. 23 (citing Tr. 1168-69). The ALJ then noted Dr. Finnity's medical source statement that Williams-Walker can "follow and understand simple directions, perform simple and more complex tasks, maintain attention and concentration, learn new tasks, and make appropriate decisions." Tr. 23 (citing Tr. 1170). The ALJ indicated that Dr. Finnity also opined that Williams-Walker cannot "maintain a regular schedule, relate adequately with others, or appropriately deal with stress," and that her psychiatric symptoms "may interfere with [her] daily functioning." Tr. 23-24 (citing Tr. 1170).

The ALJ accorded "some" weight to Dr. Finnity's opinion because it was based on an in-person evaluation of Williams-Walker and it accounted for some of the positive examination findings. Tr. 24. It was proper for the ALJ to consider both of these factors when evaluating Dr. Finnity's opinion. *See* 20 C.F.R. §§ 404.1527(c)(1), (3), 416.927(c)(1), (3). Despite Williams-Walker's assertion that the ALJ failed to explain why he discounted Dr. Finnity's opinion (ECF No. 10-1, at 24), the ALJ provided three distinct reasons in his decision.

6

First, the ALJ noted that "the totality of the evidence shows that [Williams-Walker]'s psychiatric symptoms will not interfere with her daily activities." Tr. 24. This is an appropriate reason to discount Dr. Finnity's opinion, because "the more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Although the ALJ did not specifically elaborate on this reason, he discussed Williams-Walker's psychiatric symptoms and daily activities throughout his decision. He explained that Williams-Walker attended college classes, participated in work-study employment as a student (which involved scheduling and assisting with conferences and helping students), and babysat. Tr. 21, 42-47. She also cared for her children, drove, and performed various household chores. Tr. 22 (citing Tr. 58, 63-64, 1173). Furthermore, medical records indicated that her depression and anxiety were well controlled. Tr. 23 (citing Tr. 947). For these reasons and other reasons mentioned throughout his decision, the ALJ concluded that Williams-Walker could "function with only mild to moderate limitations" and that the record did not support Dr. Finnity's opinion that she could not "maintain a regular schedule, relate adequately with others, or appropriately deal with stress." Tr. 23-24.

Second, the ALJ discounted Dr. Finnity's opinion because it contained no supporting evidence that Williams-Walker could not maintain a regular schedule, relate adequately with others, or appropriately deal with stress. Tr. 24. This is an appropriate reason to discount the opinion, because "the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings," and "[t]he better an explanation a source provides for an opinion," the more weight the SSA will give to that opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). After reviewing Dr. Finnity's opinion (Tr. 1168-71), this Court agrees that the opinion did not contain any evidence or explanation for the limitations imposed.

7

Finally, the ALJ discounted Dr. Finnity's opinion because it indicated that Williams-Walker could "perform many activities, including dressing, bathing, grooming, cooking, cleaning, managing money, etc." and thus was "internally inconsistent." Tr. 24 (citing Tr. 1170). It is proper to discount a medical opinion that is internally inconsistent, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), but this Court is not convinced that Dr. Finnity's opinion that Williams-Walker cannot "maintain a regular schedule, relate adequately with others, or appropriately deal with stress" is inconsistent with her report that Williams-Walker can dress, bathe, and groom herself, cook, clean, and manage money. Tr. 24 (citing Tr. 1170). Dr. Finnity's opinion that Williams-Walker cannot "adequately relate with others" is undermined, however, by her report that Williams-Walker "socializes with friends" and has a "good relationship with her family." Tr. 1170.

Accordingly, for the reasons stated, the ALJ properly evaluated Dr. Finnity's opinion and gave appropriate reasons for the weight assigned to that opinion.

### B.     Dr. Inman-Dundon's Opinion

The ALJ also evaluated Dr. Inman-Dundon's opinion and gave appropriate reasons for discounting it. Tr. 25. (citing Tr. 1176-93). The ALJ noted that Dr. Inman-Dundon opined that Williams-Walker had "mild" difficulties in social functioning and "moderate" difficulties in concentration, persistence, and pace. *Id.* The ALJ gave this opinion "some" weight and explained that he found that Williams-Walker had "moderate" difficulties in social functioning and "mild" difficulties in concentration, persistence, and pace. *Id.*

The ALJ reasoned that Williams-Walker was "moderately" limited in social functioning because, although Williams-Walker testified that she was a "people person" (Tr. 62) and that she interacted with others at her work study (Tr. 44, 46), she reported being more withdrawn lately

(Tr. 62). Accordingly, the RFC assessment limited Williams-Walker to only occasional interaction with co-workers and the general public. Tr. 20. The ALJ explained that he found Williams-Walker to have only "mild" limitations in concentration, persistence, and pace because there was "scant" evidence to support the assertion that she struggled with those abilities, and because she attended college courses and participated in a work study program without difficulties concentrating. Tr. 25. In fact, Williams-Walker testified that her difficulties in class stemmed from physical pain related to her fibromyalgia and were not due to her mental impairments. Tr. 51-52. As explained above, an ALJ is entitled to discount a medical opinion that is not supported by relevant evidence, is not well-explained, and is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Accordingly, for these reasons, the ALJ properly evaluated Dr. Inman-Dundon's opinion and gave an appropriate explanation for the weight he assigned to it.

Although the ALJ's RFC assessment did not perfectly correspond with either Dr. Finnity's or Dr. Inman-Dundon's opinion, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The RFC assessment certainly addresses Williams-Walker's mental impairments, as it limits her to low stress work that involves only occasional decision-making, and only occasional interaction with co-workers and the general public. Tr. 20. The ALJ was entitled to resolve any conflicting evidence that suggested that Williams-Walker required additional mental limitations. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits, it must "defer to the Commissioner's

resolution of conflicting evidence"). This Court finds that the ALJ did not err when he weighed Dr. Finnity's and Dr. Inman-Dundon's opinions and that the RFC is supported by substantial evidence.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 28, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court